# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **1. STEPHEN JONES,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-22-278-HE** |
| | ) | |
| **1. J. KEVIN STITT, Governor of Oklahoma;** | ) | |
| **2. PAUL ZIRIAX, Secretary of the** | ) | |
| **Oklahoma State Election Board,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT

_____

**Respectfully submitted,**

**Stephen Jones, OBA #4805**
**STEPHEN JONES & ASSOCIATES**
**214-A North Independence**
**Post Office Box 472**
**Enid, Oklahoma 73702-0472**
**580-242-5500 (phone)**
**580-242-4556 (fax)**

April 1, 2022.

## SUBJECT INDEX

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

   Statutes/Constitution:

      U.S. Const. amend. XVII.…..............................................................1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS............................2

III.  ARGUMENT AND AUTHORITIES.....................................................4

   A.    THE SEVENTEENTH AMENDMENT DOES NOT PERMIT A
         SPECIAL ELECTION TO FILL SENATOR INHOFE'S SEAT UNTIL
         AFTER HE VACATES HIS SENATE SEAT, WHICH IS NOT
         EXPECTED TO OCCUR UNTIL JANUARY 3, 2023............................5

   Cases:

   *MediaNews Grp., Inc. v. McCarthey,* 494 F.3d 1254, 1261 (10th Cir. 2007)..........4

   *Judge v. Quinn*, 612 F.3d 537, 547 (7th Cir. 2010)....................................5

   *Judge v. Quinn*, 387 Fed. Appx. 629 (7th Cir. 2010)..................................5

   Statutes/Constitution:

   Fed. R. Civ. P. 56(a)....................................................................4

   Fed. R. Civ. P. 56(g)....................................................................5

   U.S. Const. amend. XVII.................................................................5

      i.    A Vacancy in the Office of a Member of the U.S. Senate Does
            Not Occur Until the Senate Seat Is No Longer Occupied and the
            Senator Has Been Officially Removed...........................................6

   Cases:

    *United States v. Sprague*, 282 U.S. 716, 731 (1931)................................6

   *Burton v. United States*, 202 U.S. 344, 369 (1906)..................................6

i

*Afran v. McGreevey*, 336 F. Supp. 2d 404 (D.N.J. 2004)......................................7-8

*Afran v. McGreevey*, 115 Fed. Appx. 539 (3d Cir. 2004)...................................7-8

*State ex. Rel. McKittrick v. Wilson*, 166 S.W.2d 499 (Mo. 1942)...........................7

**Statutes/Constitution:**

U.S. Const. amend. XVII…...................................................................8

26 O.S. § 12-101(C)(2)......................................................................8

**Textbooks:**

 Black's Law Dictionary (11th ed. 2019)....................................................6

 Ballentine's Law Dictionary, (2010).......................................................7

Websters Practical Dictionary (1910).......................................................7


       **ii.     There Is No Express Delegation of Authority in the U.S. Constitution Permitting a State to Call a Special Election to Replace a U.S. Senator Prior to the Senator Vacating His or Her Office**...........................................................................9

**Cases:**

*U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 802 (1995)...............................9

*Judge v. Quinn,* 612 F.3d 537, 541, 551 (7th Cir. 2010)..................................10-11

**Statutes/Constitution:**

U.S. Const. amend. XVII…..............................................................9, 10, 11

Okla. Const. art. I, § 1...................................................................10

28 U.S.C. § 1..............................................................................10

       **iii.    The State of Oklahoma's Prior Violations of the Seventeenth Amendment Are Not Relevant**..................................12

**Cases**:

*Powell v. McCormack*, 395 U.S. 486 (1969)...........................................................12

**Statutes/Constitution**:

U.S. Const. amend. XVII…..........................................................................................12

      B.     **THERE IS NO PRESENT LEGAL IMPEDIMENT TO SENATOR INHOFE WITHDRAWING OR REVOKING HIS IRREVOCABLE PLEDGE TO RETIRE PRIOR TO ITS EFFECTIVE DATE OF JANUARY 3, 2023 AND REMAINING IN OFFICE THROUGH THE EXPIRATION OF HIS TERM IN JANUARY 2027**............................................................................12

**Cases**:

*Burton v. United States,* 202 U.S. 344, 366, 369 (1906)...................................12-13

*U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 836 (1995)...............................13

**Statutes/Constitution**:

U.S. Const. Art. I, § 5................................................................................................13

26 O.S. § 12-119................................................................................................13-14

      C.     **CONSISTENT WITH THE SEVENTEENTH AMENDMENT, OKLAHOMA LAW DOES NOT PERMIT A SPECIAL ELECTION TO REPLACE SENATOR INHOFE PRIOR TO SENATOR INHOFE ACTUALLY VACATING HIS OFFICE**....................................................................15

**Cases**:

*Fanning v. Brown*, 2004 OK 7, ¶ 10, 85 P.3d 841, 845–46....................................15

*In re City of Durant*, 2002 OK 52, ¶ 13, 50 P.3d 218, 221.....................................15

*Toch, LLC v. City of Tulsa*, 2020 OK 81, ¶ 25, 474 P.3d 859, 867.......................17

*United States v. Woods*, 571 U.S. 31, 45-46 (2013)...............................................17

*In re C.R.T.*, 2003 OK CIV APP 29, ¶ 35, 66 P.3d 1004, 1012.............................18

**Statutes/Constitution:**

U.S. Const. amend. XVII….........................................................................15, 16, 19

51 O.S. § 10(C)........................................................................................................15

26 O.S. § 12-101(C)................................................................................................15

26 O.S. §§ 1-101 – 1-103........................................................................................16

26 O.S. § 12-101 through Laws 2021, SB 959, c. 582, § 2....................................16

26 O.S. § 12-101 through Laws 2021, SB 959, c. 582............................................16

51 O.S. § 10........................................................................................................16-19

26 O.S. § 12-101(C)(2)......................................................................................17-18

26 O.S. § 12-101....................................................................................................17

26 O.S. § 12-119....................................................................................................19

     **D.**     **PLAINTIFF HAS STANDING TO BRING CLAIMS FOR DECLARATORY JUDGMENT AND INJUNCTION**...............................19

**Cases:**

*Judge v. Quinn,* 612 F.3d 537, 541, 544 (7th Cir. 2010).......................................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–62 (1992)...............................20

*Massachusetts v. EPA*, 549 U.S. 497, 517 (2007)..................................................20

*Carney v. Adams*, 141 S. Ct. 493, 495, 208 L. Ed. 2d 305 (2020)........................20

**Statutes/Constitution:**

U.S. Const. amend. XVII.........................................................................................20

     **E.**  **PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION AGAINST DEFENDANTS**...........................................................................21

**Cases:**

*Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007).......21

*Judge v. Quinn*, 612 F.3d 537, 547 (7th Cir. 2010)............................................21-22

*Fish v. Kobach,* 840 F.3d 710, 751 (10th Cir. 2016).................................................22

*RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1210 (10th Cir. 2009).....................22

*Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001)......................................22

*Awad v. Ziriax,* 966 F. Supp. 2d 1198, 1207 (W.D. Okla. 2013)..........................23

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994)……………………………………………………………………….23

**Statutes/Constitution:**

U.S. Const. amend. XVII…..............................................................................21-23

51 O.S. § 10…………...............................................................................22

**Textbooks:**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)……..............................................................22

IV.   **CONCLUSION**……………………………………………….………23

**Statutes/Constitution:**

U.S. Const. amend. XVII.......................................................................................23

Plaintiff Stephen Jones ("Plaintiff" or "undersigned Plaintiff") hereby respectfully moves this Court pursuant to Fed. R. Civ. P. 56 to grant him favorable summary judgment on all claims asserted by Plaintiff in his Complaint. Specifically, Plaintiff seeks a declaratory judgment and a permanent injunction against the Defendants J. Kevin Stitt, Governor of the State of Oklahoma, ("Governor") and Paul Ziriax, Secretary of the Oklahoma State Election Board, ("Ziriax") preventing the premature and unauthorized special election in 2022 to replace the Honorable James M. Inhofe ("Senator Inhofe") as a member of the U.S. Senate from Oklahoma. Further, Plaintiff seeks a declaratory judgment and a permanent injunction against the Governor mandating that the Governor: (a) issue a writ for a special election after Senator Inhofe vacates his office on or about January 3, 2023 and (b) temporarily appoint a replacement U.S. Senator until Senator Inhofe's office is filled by a special election held in conformity with the Seventeenth Amendment of the U.S. Constitution and Oklahoma law.

## I.    INTRODUCTION

The sole issue presented in this case is whether a special election scheduled during the 2022 election cycle to replace Senator Inhofe as a member of the U.S. Senate from Oklahoma may occur prior to Senator Inhofe actually vacating his office, which is currently scheduled to occur on January 3, 2023. The answer is undoubtedly that the Seventeenth Amendment of the U.S. Constitution and Oklahoma law preclude a special election to replace a member of the U.S. Senate prior to the Senator actually vacating his or her office. Therefore, this Court should enter summary judgment in favor of Plaintiff.

1

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On February 25, 2022, Senator Inhofe submitted a letter dated February 28, 2022 to the Oklahoma Secretary of State Brian Bingman that contained an "irrevocable pledge" to retire from the U.S. Senate effective January 3, 2023.  February 28, 2022 letter from Senator Inhofe to Oklahoma Secretary of State Brian Bingman, attached hereto as Exhibit "1."

2.     On March 1, 2022, the Governor issued an Executive Department Executive Proclamation (the "Proclamation") to the Oklahoma State Election Board and Secretaries of the County Election Boards ordering a Special Election be held to fill a vacancy in the office of U.S. Senator from Oklahoma, due to the retirement of Senator Inhofe. The Proclamation orders that the Filing Period for the Special Election to replace Senator Inhofe shall be held on April 13, 14, and 15, 2022; the Special Primary Election shall be held on Tuesday, June 28, 2022; if required, a Special Runoff Primary Election shall be held on Tuesday, August 23, 2022; and the Special General Election shall be held on Tuesday, November 8, 2022.  Proclamation, attached hereto as Exhibit "2."

3.     Based on the Proclamation, Ziriax, Secretary of the Oklahoma State Election Board, has issued a public document listing the offices that are on the ballot in 2022 and a "2022 State of Oklahoma Federal Candidate Filing Packet."  Senator Inhofe's unexpired Senate office is included in both documents as an office on the ballot in 2022. State of Oklahoma Terms of Office, attached hereto as Exhibit "3"; and 2022 State of Oklahoma Federal Candidate Filing Packet, p. 6., attached hereto as Exhibit "4."

4.     As of the date of this filing, Senator Inhofe continues to vote on Senate matters, introduce bills, participate in Senate Committees and maintain Senate offices in Enid, Oklahoma City, Tulsa, and Washington, D.C.  James M. Inhofe, U.S. Senator for Oklahoma, *Voting Record*, https://www.inhofe.senate.gov/about/voting-record  (last visited on April 1, 2022);  James M. Inhofe, U.S. Senator for Oklahoma, *Legislation*, https://www.inhofe.senate.gov/about/legislation (last visited on April 1, 2022);  James M. Inhofe, U.S. Senator for Oklahoma, *About Senator Inhofe*, https://www.inhofe.senate.gov/about/biography  (last visited on April 1, 2022);  James M. Inhofe, U.S. Senator for Oklahoma, *Contact Jim*, https://www.inhofe.senate.gov/contact  (last visited on April 1, 2022), a print out of these pages is attached hereto as Exhibit "5."

5.     Plaintiff is a registered voter in the State of Oklahoma.  Affidavit of Stephen Jones, ¶2, a copy attached hereto as Exhibit "6."

6.     Plaintiff is eligible to be appointed by the Governor to the office of U.S. Senator from Oklahoma that is currently scheduled to be vacated by Senator Inhofe effective on January 3, 2023. Specifically, Plaintiff is over the age of 30, has been a registered Republican voter in Oklahoma for at least the last five years and is willing to submit to the Oklahoma Secretary of State an oath affirming that he will not file as a candidate for the office when it next appears on the ballot. Ex. 6, ¶3.

7.     Plaintiff was the Republican nominee for the U.S. Senate from Oklahoma in 1990.  Ex. 6, ¶4.

8.     Plaintiff formerly was employed by U.S. Senators as Special Assistant, and is the author of a biography on Senator W. Chapman Revercomb, in addition to being a member of the National Republican Senatorial Committee Trust.  Plaintiff also served briefly as Republican State Chairman and as General Counsel of the Republican State Committee and represented numerous Republican office holders and candidates, including Governors, State Treasurers, Justices of the Supreme Court, State House members, State Senators, and members of the Oklahoma Corporation Commission. Ex. 6, ¶5.

9.     Plaintiff has formally applied to the Governor to be temporarily appointed as U.S. Senator from Oklahoma when Senator Inhofe vacates his office, which is scheduled to occur on January 3, 2023.  March 31, 2022 Letter from Stephen Jones to the Governor, attached hereto as Exhibit "7."

### III.     ARGUMENT AND AUTHORITIES

This Court should render summary judgment in the undersigned Plaintiff's favor because it is clear that there is no genuine issue of material fact, and Plaintiff is entitled to judgment as a matter of law. Summary Judgment is appropriate when, construing the record in the light most favorable to the non-moving party, "there is no genuine issue of material fact and one party is entitled to judgment as a matter of law." *MediaNews Grp., Inc. v. McCarthey,* 494 F.3d 1254, 1261 (10th Cir. 2007); *see also* Fed. R. Civ. P. 56(a). Additionally, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief —

that is not genuinely in dispute and treating the fact as established in the case."  Fed. R.

Civ. P. 56(g).

    **A.**    **THE SEVENTEENTH AMENDMENT DOES NOT PERMIT A SPECIAL ELECTION TO FILL SENATOR INHOFE'S SEAT UNTIL AFTER HE VACATES HIS SENATE SEAT, WHICH IS NOT EXPECTED TO OCCUR UNTIL JANUARY 3, 2023.**[1]

The Seventeenth Amendment governs the filling of vacancies in the U.S. Senate.

The critical phrases on this point are as follows:

> When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

U.S. Const. amend. XVII.

In order for the Seventeenth Amendment to be activated, "a vacancy must 'happen' in 'the representation of any State in the Senate.'"  *Judge v. Quinn*, 612 F.3d 537, 547 (7th Cir. 2010), opinion amended on denial of reh'g, *Judge v. Quinn*, 387 Fed. Appx. 629 (7th Cir. 2010).  After the vacancy, the executive authority of the State has an indispensable duty to issue writ of election to fill the vacancy.  *Id*.  Consequently, the Seventeenth Amendment "describes a chain of events: when a vacancy happens, the state executive issues a writ of election, which calls for an election in which the people will fill the vacancy."  *Id*. at 551.  Therefore, to determine when the state executive (i.e., the

---

[1] As discussed below, there is nothing legally preventing Senator Inhofe from changing his mind and withdrawing and/or revoking his resignation prior to its effective date of January 3, 2023.

Governor) has the power and obligation to issue a writ of election to fill a Senate seat, it is critical to know when a vacancy occurs in the office of a member of the U.S. Senate.

> **i.    A Vacancy in the Office of a Member of the U.S. Senate Does Not Occur Until the Senate Seat Is No Longer Occupied and the Senator Has Been Officially Removed.**

"The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning; where the intention i[s] clear there is no room for construction and no excuse for interpolation or addition." *United States v. Sprague*, 282 U.S. 716, 731 (1931).

The term vacancy is ordinarily understood to mean an office, post or piece of property that is not occupied.  Specifically, Black's Law Dictionary defines vacancy as:

> 1. The quality, state, or condition of being unoccupied, esp. in reference to an office, post, or piece of property. 2. **The time during which an office, post, or piece of property is not occupied**. 3. An unoccupied office, post, or piece of property; an empty place. • Although the term sometimes refers to an office or post that is temporarily filled, the more usual reference is to an office or post that is unfilled even temporarily. An officer's misconduct does not create a vacancy even if a suspension occurs; **a vacancy, properly speaking, does not occur until the officer is officially removed**. 4. A job opening; a position that has not been filled.

VACANCY, Black's Law Dictionary (11th ed. 2019).

Further, the U.S. Supreme Court has indicated that a Senate office may only become vacant by the Senator's "death, or by expiration of his term of office, or by some direct action on the part of the Senate in the exercise of its constitutional powers." *Burton v. United States*, 202 U.S. 344, 369 (1906).  As such, a vacancy in a Senate office

does not occur until the office is no longer occupied and "properly speaking, does not occur until the officer is officially removed."[2]

Here, Senator Inhofe's office will be occupied through at least January 2, 2023. As of the date of this filing, Senator Inhofe continues to vote on Senate matters, introduce bills, participate in Senate Committees and maintain an elaborate suite of Senate offices in multiple cities.  Statement of Undisputed Material Fact ("SOUMF") No. 4.  He will not be removed from the office due to his retirement until January 3, 2023 at the earliest. SOUMF No. 1. Therefore, as a matter of law, a vacancy in Senator Inhofe's office will not happen until January 3, 2023 at the earliest.

This same conclusion was reached is an analogous case from New Jersey, *Afran v. McGreevey*, 336 F. Supp. 2d 404 (D.N.J. 2004), *aff'd, Afran v. McGreevey*, 115 Fed. Appx. 539 (3d Cir. 2004).  In *Afran*, the New Jersey Governor announced on August 12, 2004 his resignation from office effective November 15, 2004. *Id*. at 405. A group of New Jersey voters filed a class action lawsuit seeking a declaration that there was a vacancy in the Governor's office as of August 12, 2004, the date the Governor announced

---

[2] Also, "[t]he word 'vacant' involves no technical or peculiar meanings; as applied to a public office it means empty, unoccupied, without an incumbent." *Vacancy in office*, Ballentine's Law Dictionary*, (2010) (citing *State ex. Rel. McKittrick v. Wilson*, 166 S.W.2d 499 (Mo. 1942)." The term "vacant" is defined by Websters Practical Dictionary (1910) as "[d]eprived of contents; empty; not filled; unengaged with business or care; unemployed; unoccupied; not occupied with an incumbent, possessor, or officer; not occupied with study or reflection; thoughtless… [a]bandoned; having no heir, possessor, claimant, or occupier." The term "vacancy" is additionally defined as having the "[q]uality of being vacant; emptiness; freedom from employment; leisure; idleness; that which is vacant; empty space; vacuity; a space between bodies or things; chasm; gap; unemployed time; interval of leisure; a place or post unfilled; an unoccupied office." *Vacant, vacancy*, Webster's Practical Dictionary, 481-82 (1910) (sourced from https://openlibrary.org/books/OL25500521M/Webster%27s_practical_dictionary).

his resignation. *Id*. If there were a vacancy in the office as of August 12, 2004, then a special election to replace the Governor was required to be held in November 2004 under New Jersey law.   *Id*. at 405–406. The New Jersey federal court rejected the voter's request finding that the Governor's office would not be "empty" or "unoccupied" until November 15, 2004, the date the resignation became effective. *Id*. at 409. Therefore, the New Jersey federal court concluded that there would not be a vacancy in the Governor's office until November 15, 2004.  *Id*. 409 – 410.[3]

Similarly, here, Senator Inhofe's office is not scheduled to be empty or unoccupied until January 3, 2023.  Therefore, the vacancy will not occur until January 3, 2023.  Consequently, under the Seventeenth Amendment, the Governor's power and duty to issue a writ of election to replace Senator Inhofe will not begin until January 3, 2023. Accordingly, it was clearly improper for the Governor to issue the Proclamation calling for a special election to replace Senator Inhofe in 2022 when there is no current vacancy in Senator Inhofe's office.[4]

---

[3] The Third Circuit's Opinion affirming the District Court did not alter this decision.  The Third Circuit concluded: "There is no vacancy here because the Governor has not yet resigned and because he continues to serve and occupy the office."  *Afran v. McGreevey*, 115 Fed. Appx. 539, 540 (3d Cir. 2004).

[4] Even if Senator Inhofe were to officially vacate his office as of the date of this filing (i.e., after March 1, 2022), the special election to replace him is not scheduled to occur until the 2024 election cycle. 26 O.S. § 12-101(C)(2).  Nevertheless, the Legislature could still pass a law changing the date to start the election process to sometime after January 3, 2023.

ii.    **There Is No Express Delegation of Authority in the U.S. Constitution Permitting a State to Call a Special Election to Replace a U.S. Senator Prior to the Senator Vacating His or Her Office.**

Defendant Ziriax previously argued to the Oklahoma Supreme Court[5] that the dispositive question is whether the U.S. Constitution expressly precludes the State from calling a special election to replace a U.S. Senator that has not yet vacated his or her office. Specifically, Ziriax argued that the operative language in the Seventeenth Amendment does not state that the Governor can "only" issue a writ of election to replace a Senator when there is a vacancy. As such, Ziriax argued that the Governor has the right to take this action without an express constitutional limitation on the Governor's authority.

Ziriax was and remains incorrect in framing the dispositive question in this manner. The dispositive question is really whether the U.S. Constitution specifically delegates to the State the authority to call a special election to replace a U.S. Senator that has not yet vacated his or her office. "[T]he states can exercise no powers whatsoever, which exclusively spring out of the existence of the national government, which the constitution does not delegate to them.... No state can say, that it has reserved, what it never possessed." *U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 802 (1995) (quoting

---

[5] The Governor was not named as a party in the prior original proceeding filed with the Oklahoma Supreme Court.  Further, the Oklahoma Supreme Court did not rule on the merits of Plaintiff's claims or Ziriax's defenses.  The Oklahoma Supreme Court simply declined to exercise its discretion to hear Plaintiff's case as an original proceeding.  *See* March 24, 2022 Order by Oklahoma Supreme Court in Case No. 120,253, a copy attached hereto as Exhibit "8."

1 Story § 627).[6] The constitutional "provisions governing elections reveal the Framers' understanding that powers over the election of federal officers had to be delegated to, rather than reserved by, the States." *Id*. at 804. As a result, the State has no power over an election to replace a U.S. Senator that has not been expressly delegated to it in the U.S. Constitution. Therefore, the State has no authority to call a special election to replace a U.S. Senator unless the U.S. Constitution specifically provides such authority.[7]

The U.S. Constitution does not expressly delegate to the State of Oklahoma the authority to call a special election to replace a U.S. Senator that has not yet vacated his or her office. The Seventeenth Amendment provides the exclusive authority for filling a vacated U.S. Senate seat. The State's authority under this Amendment is premised on the present tense of "[w]hen vacancies happen in the representation of any state in the Senate." There is no express delegation of authority to the State in this Amendment to call a special election for a theoretical vacancy that may or may not happen in the future. As a result, no such authority exists for calling the special election.

The second sentence of the second paragraph of the Seventeenth Amendment permitting "temporary appointments until the people fill the vacancies by election as the legislature may direct" likewise does not permit a special election prior to a vacancy. This sentence simply permits a temporary appointment until the election occurs. *Judge*,

---

[6] *See also* Okla. Const. art. I, § 1 (the U.S. Constitution "is the supreme law of the land").
[7] Ziriax previously suggested that the recent hearings to replace Justice Stephen Breyer as associate justice of the U.S. Supreme Court while Justice Breyer remains on the court are analogous to the present case. This is not true. There is no Seventeenth Amendment equivalent for U.S. Supreme Court vacancies. Further, Article III of the U.S. Constitution gives Congress broad authority over setting up the U.S. Supreme Court. *See* 28 U.S.C. § 1 (setting the current number of active U.S. Supreme Court justices at nine).

612 F.3d at 551 (this sentence "qualifies this chain of events by permitting an appointee to intercede temporarily between the start of the vacancy and the election that permanently fills that vacancy."). It is axiomatic that there is no temporarily appointed Senator until there is a vacancy. As a result, the second sentence of the second paragraph of the Seventeenth Amendment does not permit a special election prior to a vacancy.

Moreover, it should be noted that unlike the Presidency, the U.S. Constitution does not provide for an office of "Vice Senator," i.e., someone who assumes the duties of Senator in the event of a vacancy. Therefore, there is no express delegation of authority to the State to call a special election to replace a U.S. Senator that has not yet vacated his or her office.

Finally, based on the recent arguments to the Oklahoma Supreme Court, it appears uncontested by the parties that the Governor must issue a writ of election after there is a vacancy. Even with the best planning, there will be a gap of time between when the hypothetical resignation takes effect and the replacement is sworn in.[8]  This will create a vacancy requiring the Governor to call a special election. There is nothing the Legislature can do to circumvent this obligation. *Judge*, 612 F.3d at 547 (describing the Governor's obligation to call a writ of election as indispensable). Therefore, a special election in 2022 would ultimately be ineffective because the Governor will still have an

---

[8] Senator Inhofe's letter does not identify a time on January 3, 2023 when he intends to retire. New U.S. Senators are scheduled to be sworn in at noon on January 3, 2023. U.S. Const. amend. XX. As a result, a retirement effective at midnight on January 3, 2023 would result in a twelve-hour vacancy. Regardless, even if the retirement were scheduled to coincide with the replacement's swearing in, the Oath of Office still takes around 25 seconds to complete.

indispensable obligation to call another special election after Senator Inhofe's hypothetical retirement becomes effective on January 3, 2023.

Accordingly, the U.S. Constitution does not permit a State to have a special election to replace a U.S. Senator prior to the Senator vacating his or her office.

### iii. The State of Oklahoma's Prior Violations of the Seventeenth Amendment Are Not Relevant.

It is anticipated that Defendants will point out that the State of Oklahoma has apparently previously violated the Seventeenth Amendment by holding premature elections to fill Senator Tom Coburn's and Senator David Boren's U.S. Senate offices. Nevertheless, the fact "[t]hat an unconstitutional action has been taken before surely does not render that same action any less unconstitutional at a later date." *Powell v. McCormack*, 395 U.S. 486 (1969).  As a result, the State's prior unchallenged violations of the Seventeenth Amendment do not make the Defendants' current actions constitutional.  Therefore, the State's prior violations of the Seventeenth Amendment are not relevant to this matter.

### B. THERE IS NO PRESENT LEGAL IMPEDIMENT TO SENATOR INHOFE WITHDRAWING OR REVOKING HIS IRREVOCABLE PLEDGE TO RETIRE PRIOR TO ITS EFFECTIVE DATE OF JANUARY 3, 2023 AND REMAINING IN OFFICE THROUGH THE EXPIRATION OF HIS TERM IN JANUARY 2027.

"[U]nder the Constitution, a Senator is elected to serve a specified number of years, and the Senate is made by that instrument the sole judge of the qualifications of its members, and, with the concurrence of two thirds, may expel a Senator from that body." *Burton*, 202 U.S. at 366.  Again, a Senate office may only become vacant by the

Senator's "death, or by expiration of his term of office, or by some direct action on the part of the Senate in the exercise of its constitutional powers." *Id.* at 369.

There is no known Senate rule or precedent that prohibits a Senator from withdrawing or revoking a letter of resignation/retirement (even one styled as irrevocable) prior to its effective date. Even if such a rule were established by the Senate, the Constitution would still require a concurrence of two-thirds of its members to expel the Senator from the Senate. U.S. Const. art. I, § 5. Consequently, there is no present legal impediment to Senator Inhofe withdrawing or revoking his pledge to retire and remaining in office through the expiration of his term in January 2027. [9]

It is anticipated that Defendants will allege that 26 O.S. § 12-119 of Oklahoma law (permitting an irrevocable resignation with a future effective date) makes Senator Inhofe's irrevocable pledge to retire effective on January 3, 2023 legally enforceable against Senator Inhofe. However, again, the Senate is the sole judge of a Senator's qualifications, and it is the only body with authority to expel a member. *Burton*, 202 U.S. at 369. Additionally, "the qualifications for Congress are fixed in the Constitution." *U.S. Term Limits, Inc.*, 514 U.S. at 836. "A state-passed measure with the avowed purpose of imposing indirectly such an additional qualification violates the Constitution." *Id.*

---

[9] There are many reasons why Senator Inhofe may change his mind about retiring. For example, his endorsed candidate Luke Holland might not prevail. Further, as recent special elections in other states have shown, it is possible a Democrat could win in November. With the possibility of an evenly divided Senate, there would undoubtedly be tremendous pressure on Senator Inhofe to revoke his retirement letter in such circumstances.

Here, to the extent that 26 O.S. § 12-119 (the Oklahoma statute permitting an "irrevocable letter of resignation") were directed to a member of the U.S. Senate, it infringes on the Senate's exclusive authority to judge a Senator's qualifications and expel a member.  It also imposes an additional qualification on a Senator, i.e., that a Senator is ineligible to hold office after the effective date of an irrevocable letter of resignation. Therefore, 26 O.S. § 12-119 of Oklahoma law places no enforceable limit on Senator Inhofe remaining in office on and after January 3, 2023. Accordingly, Senator Inhofe is still free to change his mind and remain in office through the date his term expires in January 2027.

Defendant Ziriax previously suggested to the Oklahoma Supreme Court that Senator Inhofe could theoretically be removed from office in the future by a vote of 67 Senators if he violates his pledge to retire. However, any Senator could theoretically be removed at any time by a vote of 67 Senators. Moreover, the fragility of life means that any Senator could theoretically be out of office at any moment. No one would argue that there is currently a vacancy in all 100 Senate seats just because any of the Senators could theoretically be out of office at any moment by a vote or death. Therefore, a theoretical future expulsion vote of Senator Inhofe (with no known rule violation or precedent) does not create a vacancy in Senator Inhofe's office.

Additionally, the fact that a future vote of 67 Senators is required to remove Senator Inhofe proves that his February 28, 2022 retirement letter did not trigger a vacancy. It is the theoretical future expulsion vote that creates the vacancy, not Senator Inhofe's retirement letter. As a result, there is no vacancy in Senator Inhofe's office.

Thus, consistent with the Seventeenth Amendment, it is premature to have an election in 2022 to replace Senator Inhofe when Senator Inhofe still has the option to remain in office through the expiration of his term in January 2027.

### C.   CONSISTENT WITH THE SEVENTEENTH AMENDMENT, OKLAHOMA LAW DOES NOT PERMIT A SPECIAL ELECTION TO REPLACE SENATOR INHOFE PRIOR TO SENATOR INHOFE ACTUALLY VACATING HIS OFFICE.

"The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute. Courts will give the words of a statute a plain and ordinary meaning, unless it is clear from the statute that a different meaning was intended by the Legislature." *Fanning v. Brown*, 2004 OK 7, ¶ 10, 85 P.3d 841, 845–46 (internal citations omitted). "When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed." *In re City of Durant*, 2002 OK 52, ¶ 13, 50 P.3d 218, 221

Consistent with the Seventeenth Amendment, the plain and unambiguous language found in 51 O.S. § 10(C) and 26 O.S. § 12-101(C) requires the special election to replace Senator Inhofe to not take place until after Senator Inhofe officially leaves office. Specifically, "[w]hen a vacancy occurs in the office of a member of the United States Senate from Oklahoma, the Governor shall **within thirty (30) days of occurrence of the vacancy**… [c]all a special election, if necessary, to fill such vacancy, as provided in Section 12-101 of Title 26 of the Oklahoma Statutes."   51 O.S. § 10(C) (emphasis added).   Section 12-101(C)(1) of Title 26 of the Oklahoma Statutes states: "A Special Primary, Runoff Primary and General Election shall be held concurrently with the next

available regularly scheduled statewide Primary, Runoff Primary and General Election, and a special candidate filing period shall be on the same dates as the regular candidate filing period for those elections."   Therefore, consistent with the Seventeenth Amendment, Oklahoma statutes do not permit the Governor to call a special election until there is the occurrence of the vacancy, and the special election shall occur in the next available regularly scheduled statewide Primary, Runoff Primary and General Election after the vacancy.

As previously discussed, a vacancy in Senator Inhofe's office is not scheduled to occur until January 3, 2023.   SOUMF No. 1.   Accordingly, as a matter of law, the election to replace Senator Inhofe cannot take place until the next available regularly scheduled statewide Primary, Runoff Primary and General Election after January 3, 2023. *See* 26 O.S. §§ 1-101 – 1-103.   Therefore, the Governor's Proclamation calling for a special election to replace Senator Inhofe in 2022 violates Oklahoma law in addition to the Seventeenth Amendment.

This conclusion is also supported by the fact that the Legislature first recognized the option of an "irrevocable resignation" by a U.S. Senator when it amended 26 O.S. § 12-101 through Laws 2021, SB 959, c. 582, § 2, emergency effective May 28, 2021. In the same piece of legislation, Laws 2021, SB 959, c. 582, the Legislature also amended 51 O.S. § 10, i.e., the statute defining when the Governor calls the special election. Consequently, the Legislature clearly understood the difference between "irrevocable resignation" and "vacancy" when it articulated the triggering event to start the thirty-day clock for the Governor to call a special election. The fact that the Legislature did not

16

mention "irrevocable resignation" when establishing this deadline shows that the Legislature meant what it said, i.e., that the triggering event for calling the special election is the "vacancy."   This is further supported by the fact that 26 O.S. § 12-101(C)(2), which introduces a March 1 deadline for deciding the election date, only mentions a "vacancy" as the triggering event. There is no mention of "irrevocable resignation" anywhere in this sub-subsection. Therefore, the triggering event for calling the special election is clearly the "vacancy."

Additionally, the terms "irrevocable resignation" and "vacancy" are not synonymous. Both of these terms are used in 26 O.S. § 12-101, i.e., the statute discussing special elections for vacancies in Congress. Specifically, subsection C of this statute states: "If a vacancy **or** irrevocable resignation occurs in the office of a member of the United States Senate from Oklahoma, the vacancy shall be filled as provided in" 51 O.S. §10. (emphasis added). The use of "or" to separate "irrevocable resignation" and "vacancy" establishes that they have a different meaning. The term "*or* is a disjunctive particle used to express an alternative or give a choice of one among two or more things." *Toch, LLC v. City of Tulsa*, 2020 OK 81, ¶ 25, 474 P.3d 859, 867, as corrected (Sept. 30, 2020) (internal citations omitted). The Oklahoma Supreme Court has "stated numerous times that the Legislature's use of the word *or* shows intent to treat the terms on either side of it as separate and distinct, or give a choice among options." *Id*. The "ordinary use [of *or*] is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *Id*. (quoting *United States v. Woods*, 571 U.S. 31, 45-46 (2013)). As a result, "irrevocable resignation" has a different meaning than "vacancy." Therefore, the

Legislature's sole use of the term "vacancy" in 51 O.S. § 10 and 26 O.S. § 12-101(C)(2) was undoubtedly by design, i.e., the "vacancy" is the operative event for calling a special election.

Moreover, "when construing a statute, [the court] will presume that the Legislature did not intend an absurd or wholly unreasonable result." *In re C.R.T.*, 2003 OK CIV APP 29, ¶ 35, 66 P.3d 1004, 1012. As shown above, there is nothing stopping Senator Inhofe from changing his mind and remaining in office through January 2027. As a result, it would be an absurd and wholly unreasonable result to permit a special election in 2022 to replace a Senator who may not actually vacate his office prior to the expiration of his term. Even if Senator Inhofe were to honor his pledge, absurd and unreasonable results would occur if the date an irrevocable resignation were submitted determines the election date. For example, Senator James Lankford or his successor will begin a six-year Senate term on January 3, 2023. There is nothing stopping Senator Lankford or his successor from submitting an irrevocable resignation on January 3, 2023 with an effective date many years in the future, such as January 3, 2028. If the date of the irrevocable resignation triggers the special election, then the special election in this example would take place in 2024. However, the person elected in the 2024 special election would not assume the office for over three years. In the interim, there would be another regularly scheduled general election in 2026. It would be absurd and unreasonable to elect a replacement Senator in 2024 who would not take the office until more than a year after a second intervening general election in 2026. As a result, such an interpretation must be avoided.

Finally, Defendant Ziriax previously argued to the Oklahoma Supreme Court that 26 O.S. § 12-119 gave the Governor authority to call the special election when he received Senator Inhofe's irrevocable letter of resignation. This is not true. Section 12-119 of Title 26 simply provides: "Upon receipt of the irrevocable letter of resignation, the Governor shall set the date for the special election." Unlike 51 O.S. § 10, there is no mention of "calling" a special election in 26 O.S. § 12-119. Consistent with the Seventeenth Amendment, the Governor can set the date for the special election to replace Senator Inhofe after receiving Senator Inhofe's retirement letter. Under this example, the date of the Special General Election to replace Senator Inhofe would be set for November 5, 2024. Further, consistent with the Seventeenth Amendment, once Senator Inhofe actually retires on January 3, 2023, the Governor can "call" or officially issue his "writ of election" to replace Senator Inhofe within thirty days of January 3, 2023. Setting a date for an election on the calendar and officially calling an election are not mutually exclusive. Therefore, there is nothing in 26 O.S. § 12-119 that gives the Governor the authority to call a special election to replace Senator Inhofe. Accordingly, consistent with the Seventeenth Amendment, Oklahoma law does not permit the Governor to call a special election to replace a U.S. Senator prior to the U.S. Senator vacating his or her office.

### D. PLAINTIFF HAS STANDING TO BRING CLAIMS FOR DECLARATORY JUDGMENT AND INJUNCTION.

Because Defendants cannot prevail on the merits of this action, it is anticipated that Defendants will argue that the undersigned Plaintiff does not have standing to bring

this lawsuit.  This is not true.  The undersigned Plaintiff has standing to bring this action. "A plaintiff satisfies constitutional standing requirements by showing that the challenged action of the defendant caused an 'injury in fact' that is likely to be redressed by a favorable decision." *Judge*, 612 F.3d at 544 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–62 (1992). "The alleged injury must be concrete and particularized, and either actual or imminent.  *Id*. (citing *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). Further, "[t]he Supreme Court has recognized that plaintiffs have standing to sue when they allege that state election procedures violate their right to vote under the Seventeenth Amendment."  *Id*. at 545.

Here, the undersigned Plaintiff has a right to vote under the Seventeenth Amendment in the present tense "[w]hen vacancies happen."  The Defendants are violating Plaintiff's right to vote by not calling the special election to replace Senator Inhofe when the vacancy happens on January 3, 2023.  Accordingly, Plaintiff has standing as a voter to bring this action to protect his right to vote under the Seventeenth Amendment.

Furthermore, the U.S. Supreme Court has indicated that a candidate for a vacancy has standing to attack an unconstitutional barrier to appointment if the candidate is "'able and ready' to apply for…[the] vacancy in the imminent future."  *Carney v. Adams*, 141 S. Ct. 493, 495, 208 L. Ed. 2d 305 (2020).  Here, the undersigned Plaintiff is not only able and ready to be appointed as Senator Inhofe's temporary replacement, the undersigned

has in fact already formally applied to the Governor for the temporary appointment. [10]
SOUMF Nos. 6 – 9.  The Defendants' action of prematurely calling the special election
in violation of the Seventeenth Amendment and Oklahoma law have unconstitutionally
deprived the undersigned Plaintiff of his opportunity to seek this temporary appointment.
Therefore, in addition to having standing as a voter, the undersigned Plaintiff also has
standing as a matter of law as an announced candidate for the temporary appointment.

### E.  PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION AGAINST DEFENDANTS.

A plaintiff seeking a permanent injunction "must prove: (1) actual success on the
merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury
outweighs the harm that the injunction may cause the opposing party; and (4) the
injunction, if issued, will not adversely affect the public interest." *Prairie Band
Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (internal quotation
marks omitted).  The undersigned Plaintiff meets all four elements in this case.

First, as established above, the special election called for in the Proclamation is
premature and violates the Seventeenth Amendment and Oklahoma law.  Further, the
Governor has an indispensable duty to call a special election and a legal obligation to
appoint a temporary replacement after Senator Inhofe vacates his office, which is
expected to occur on January 3, 2023. *See* U.S. Const. amend. XVII; *Judge*, 612 F.3d at

---

[10] Defendant Ziriax previously argued to the Oklahoma Supreme Court that the
undersigned Plaintiff did not have standing under *Carney* because the undersigned had
not yet applied for the temporary appointment and it was speculative whether any such
application would be made.  The undersigned Plaintiff has subsequently remedied any
such defect by formally applying to the Governor for the temporary appointment.
SOUMF Nos. 6 – 9.

547; 51 O.S. § 10(C) and SOUMF No. 1.   Therefore, the undersigned has established actual success on the merits.

Second, the undersigned will suffer irreparable harm absent a permanent injunction.   A plaintiff establishes irreparable harm when there is "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).   This is shown when "such damages would be inadequate or difficult to ascertain."   *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001).   Further, '[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id*. at 963 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)).

Here, Defendants are violating the undersigned's Seventeenth Amendment right to (a) vote when a vacancy happens and (b) seek the temporary appointment to the U.S. Senate.   Therefore, no further showing of irreparable harm is required.   Regardless, it would be difficult, if not impossible, to ascertain money damages for a violation of the undersigned's right to vote and seek the temporary appointment.   Accordingly, the undersigned will suffer irreparable harm absent a permanent injunction.

Third, the threatened injury outweighs the harm that the injunction may cause the Defendants.   The permanent injunction should not cause Defendants to suffer any harm. Just the opposite, the Governor will likely welcome and relish the opportunity to temporarily appoint a replacement Senator when Senator Inhofe vacates his office.

Therefore, the threatened injury outweighs the harm that the permanent injunction may cause the Defendants.

Finally, the entry of the permanent injunction is in the public interest.  In fact, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 966 F. Supp. 2d 1198, 1207 (W.D. Okla. 2013) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994)).  Therefore, the undersigned is entitled to a permanent injunction against the Defendants to prevent Defendants' continuing violations of the Seventeenth Amendment and Oklahoma law.

## IV.   CONCLUSION

The Governor lacked authority to issue his Proclamation requiring a special election to replace Senator Inhofe prior to Senator Inhofe actually vacating his office. The Court should enter summary judgment granting declaratory relief and issuing a permanent injunction against Defendants preventing the premature and unauthorized special election in 2022 to replace Senator Inhofe.  Further, this Court should enter summary judgment granting declaratory relief and issuing a permanent injunction mandating that the Governor: (a) issue a writ for a special election after Senator Inhofe vacates his office on or about January 3, 2023 and (b) temporarily appoint a replacement U.S. Senator until Senator Inhofe's office is filled by a special election held in conformity with the Seventeenth Amendment and Oklahoma law.

Respectfully submitted,


**s/ Stephen Jones**
**Stephen Jones, OBA #4805**
**STEPHEN JONES & ASSOCIATES**
**214-A North Independence**
**Post Office Box 472**
**Enid, Oklahoma 73702-0472**
**580-242-5500 (phone)**
**580-242-4556 (fax)**


## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing will be served on the Defendants at the same time as the Summonses and Complaint.


**s/ Stephen Jones**
 **Stephen Jones**

24